**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANTHONY FECAROTTA,

    Plaintiff,

        v.

COVENANT TRANSPORT, INC.,

    Defendant.

Case No. 22-cv-2262

Judge Martha M. Pacold

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Fecarotta filed this lawsuit seeking to recover commissions allegedly owed to him from Defendant Covenant Transport, Inc. Several months before Fecarotta filed his complaint, Covenant filed a lawsuit in Tennessee state court seeking to recover commissions it allegedly overpaid Fecarotta. On June 6, 2022, Covenant filed a motion to dismiss the complaint in this lawsuit, arguing in part that the two cases are duplicative. But given that there are concurrent federal and state cases at issue, the court instead considers whether it should stay or dismiss the case under the abstention doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Abstention is appropriate in this case because the state and federal proceedings are parallel, the necessary exceptional circumstances exist, and a stay would promote wise judicial administration. Accordingly, the motion to dismiss [6] is denied without prejudice and the case is stayed pending the resolution of the state court proceedings, including any appeals in *Covenant Transport, Inc. v. Fecarotta, et al.*, No. 22 C 251 (Tenn. Cir. Ct. filed Feb. 18, 2022).

**I**

The claims at issue in this case arise from Fecarotta's employment at Covenant, a transportation business. [7] at 5.[1] Fecarotta began working for

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

Covenant as an Enterprise Sales Manager on January 27, 2020. [1] at ¶¶ 1, 9;[2] [17] at 6. After about seven months, Covenant promoted him to the position of Regional Sales Manager. [1] at ¶ 9. As Regional Sales Manager, Fecarotta received a base salary and commission on a quarterly basis. *Id.* at ¶ 10. According to Fecarotta, he was to be paid commissions for (a) "[t]otal revenue invoiced to the customer less transportation costs for each Brokerage"; (b) "[l]oad count multiplied times $50 per load delivered during the quarter per solo asset"; and (c) "[l]oad count multiplied times $85 per load delivered during the quarter per team asset." *Id.* at ¶ 12. Covenant terminated Fecarotta's employment on November 18, 2021. [17] at 6.

On January 14, 2022, Fecarotta sent a letter to Covenant requesting his unpaid commissions. *Id.* According to Fecarotta, he had not received the agreed upon commissions for various sales in the last three quarters of the 2021 sales year. [1] at ¶¶ 14–15. Fecarotta estimates that the total amount of unpaid commissions is about $48,000. *Id.* at ¶ 17.

Covenant filed a lawsuit (the state lawsuit) against Fecarotta in the Circuit Court of Hamilton County, Tennessee on February 18, 2022. [7-1].[3] That complaint alleged that Covenant mistakenly overpaid Fecarotta commissions in the amount of $9,374. *Id.* at ¶ 16. The complaint asserts causes of action for breach of contract, procurement of breach of conduct, tortious interference, and unjust enrichment. *Id.* at ¶¶ 18–40.

About two months later, on April 29, 2022, Fecarotta filed a complaint in this case (the federal lawsuit). [1]. That complaint alleged (1) violation of the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1 *et seq.*; (2) breach of contract; and (3) fraudulent concealment. *Id.* at ¶¶ 22–48.

On June 6, 2022, Covenant filed a motion to dismiss Fecarotta's complaint with prejudice for failure to state a claim. [6].

## II

Covenant first argues that this federal lawsuit should be dismissed because it is duplicative of the pending state lawsuit. [7] at 7–9. But Covenant's arguments (and Fecarotta's response) rely on caselaw involving concurrent federal cases, rather than concurrent federal and state cases. In the latter situation (when there

---

[2] The complaint misnumbers several paragraphs (*e.g.*, there are two paragraphs numbered nine and no paragraph numbered eleven). Nonetheless, the court cites the complaint as it is numbered.

[3] The court takes judicial notice of the complaint filed in the state lawsuit, which can be found on the docket at [7-1].

are concurrent federal and state cases): "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Under the *Colorado River* abstention doctrine, however, "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and only if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River*, 424 U.S. at 817–18).

A federal court may raise *Colorado River* abstention *sua sponte*. *Driftless Area Land Conservancy v. Valcq,* 16 F.4th 508, 524–25 (7th Cir. 2021) (citing *Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 27 n.4 (1st Cir. 2010) ("As with other forms of abstention, our decision to decline jurisdiction under *Colorado River* may be sua sponte.")). "[I]n light of the principles of federalism, equity, and comity that animate abstention doctrine," it is appropriate to raise abstention here. *Hadzi-Tanovic v. Johnson*, No. 20-cv-3460, 2021 WL 5505541, at *3 (N.D. Ill. Nov. 24, 2021).

## A

The Seventh Circuit employs a two-step inquiry when assessing whether *Colorado River* abstention is appropriate. First, the court considers "whether the concurrent state and federal actions are . . . parallel." *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 647 (7th Cir. 2021) (quoting *DePuy Synthes Sales, Inc., v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020)). If so, the court assesses "whether the necessary exceptional circumstances exist to support a stay or dismissal." *Id.* (quoting *DePuy Synthes Sales*, 953 F.3d at 477). Common considerations for this second inquiry include:

1. Whether the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property;
2. The inconvenience of the federal forum;
3. The desirability of consolidating litigation in one place—that is, the value in avoiding "piecemeal" litigation;
4. The order in which jurisdiction was obtained in the concurrent fora;
5. The source of governing law—federal or state;
6. The adequacy of the state court action to protect the federal plaintiffs' rights;
7. The relative progress of the state and federal proceedings;
8. The presence or absence of concurrent jurisdiction;

3

9.    The availability of removal; and

10.    Whether the federal action is vexatious or contrived.

*Id.* (quoting *DePuy Synthes Sales*, 953 F.3d at 477).

"Not all of these considerations will be pertinent to every case, nor does this list preclude the district court from taking into account a special characteristic of the case before it." *DePuy Synthes Sales*, 953 F.3d at 477. The district court is also "given the discretion to apply more significant weight and analysis to those factors that are most relevant to the case at the hand." *Freed*, 756 F.3d at 1021 (citing *Clark v. Lacy*, 376 F.3d 682, 688 (7th Cir. 2004)).

## B

The court first considers whether the state and federal lawsuits are parallel.

For two concurrent lawsuits to be parallel, "[i]t is not necessary" that they "be 'formally symmetrical.'" *Loughran*, 2 F.4th at 647 (quoting *Freed*, 756 F.3d at 1019). Instead, it "is enough if the state and federal suits involve 'substantially the same parties . . . contemporaneously litigating substantially the same issues.'" *Id.* (quoting *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011)). The "'critical question' is whether there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Id.* (quoting *Huon*, 657 F.3d at 646).

Here, both the federal and state lawsuits involve parties litigating substantially the same issue—the proper amount of commissions earned by Fecarotta during his time as Regional Sales Manager. In other words, both lawsuits are based on the same core factual allegations.

Fecarotta argues the cases are distinct because the state lawsuit includes an additional defendant. [17] at 10–11. But this fact does not change the analysis. As the Seventh Circuit has explained, the "mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citing *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992)).

There is also a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. The state complaint asserts claims for breach of conduct, tortious interference, and unjust enrichment based on the alleged overpayment of commissions. [7-1] at ¶¶ 16, 18–40. Similarly, the federal complaint asserts claims for violation of the IWPCA, breach of contract, and

4

fraudulent concealment based on underpayment during the same period. [1]. These claims are interrelated. A decision by the state court on the merits of the complaint would include determining whether the commissions were properly paid. So there is a substantial likelihood that a state court decision would dispose of the claims before this court. The state and federal lawsuits are therefore parallel.

C

Because the lawsuits are parallel, the court next considers "whether the necessary exceptional circumstances exist to support a stay or dismissal." *Loughran*, 2 F.4th at 647 (quoting *DePuy Synthes Sales*, 953 F.3d at 477). The court addresses each of the factors mentioned above. *See Kane v. Bank of Am., Nat'l Ass'n*, No. 13-cv-8053, 2017 WL 2243055, at *2–3 (N.D. Ill. May 23, 2017).

*1. Whether the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property.* Here, "[t]he state court has not assumed jurisdiction over property, so this factor weighs against abstention." *Knight v. DJK Real Estate Grp., LLC*, No. 15-cv-5960, 2016 WL 427614, at *6 (N.D. Ill. Feb. 4, 2016).

*2. The inconvenience of the federal forum.* The Northern District of Illinois is a convenient forum for Fecarotta (an Illinois resident), but an inconvenient forum for Covenant, a Tennessee corporation with its principal place of business in Chattanooga, Hamilton County, Tennessee. [1] at ¶¶ 3–4. Conversely, Tennessee state court is a convenient forum for Covenant, but an inconvenient forum for Fecarotta. *See AAR Int'l*, 250 F.3d at 522–23.

Because the Circuit Court of Hamilton County, Tennessee is not within this court's geographical jurisdiction, and the parties are in different states, either forum (state or federal) will inevitably be inconvenient for one of the parties. *Cf. Freed v. Friedman*, 215 F. Supp. 3d 642, 655 (N.D. Ill. 2016) (concluding the federal forum was not inconvenient because both courts were in Chicago). The second factor is thus neutral.

*3. The desirability of consolidating litigation in one place—that is, the value in avoiding "piecemeal" litigation.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Tyler v. City of S. Beloit*, 456 F.3d 744, 755 (7th Cir. 2006) (quoting *LaDuke v. Burlington N. R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)). This circumstance gives rise to several problems. First, as the Seventh Circuit notes, "a party may try to accelerate or stall proceedings in one of the forums in order to ensure that the court most likely to rule in its favor will decide a particular issue first." *Id.* (quoting *LaDuke*, 879 F.2d at 1560). Second, the possibility also

5

"exists that one court, unaware that the other court has already ruled, will resolve an issue differently and create a conflict between the two forums." *Id.* (quoting *LaDuke*, 879 F.2d at 1560).

Here, permitting "the two suits to proceed concurrently would waste the parties' resources, risk duplicative rulings and reward a strategic gamesmanship that has no place in a dual system of federal and state courts." *Id.* at 756. As discussed above, because the two lawsuits involve substantially the same parties and issues, litigating the core factual allegations in a single forum would conserve judicial resources. A single lawsuit would also reduce the risk of conflicting final judgments on the merits. *See id.* (citing *Clark*, 376 F.3d at 687). The third factor weighs heavily in favor of abstention.

*4. The order in which jurisdiction was obtained in the concurrent fora.* Covenant filed its lawsuit against Fecarotta in the Circuit Court of Hamilton County, Tennessee on February 18, 2022. [7-1]. A little over two months later, on April 29, 2022, Fecarotta filed this parallel federal lawsuit. [1]. Although a two-month gap between the lawsuits is not significant, it is undisputed that the state lawsuit predates the federal lawsuit. *See Freed*, 756 F.3d at 1022 (this factor likely favored abstention when a second state lawsuit was filed two months later and a federal lawsuit eight months later); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th Cir. 1985) (the filing of a state case almost five months before the parallel federal case weighed in favor of abstention).

As in *Freed*, this factor "[a]t best . . . could be considered neutral, but more likely favors abstention." *Freed*, 756 F.3d at 1022.

*5. The source of governing law—federal or state.* Under Seventh Circuit caselaw, "a state court's expertise in applying its own law favors a *Colorado River* stay." *Freed*, 756 F.3d at 1022 (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 660 (7th Cir. 1988)); *Knight*, 2016 WL 427614, at *7 ("The source of the governing law here is state law, which favors abstention."). Both lawsuits at issue rely entirely on state law. However, the state complaint relies on Tennessee law, whereas the federal complaint relies on Illinois law. Given that Tennessee courts do not have expertise in applying Illinois law (and the Northern District of Illinois frequently applies Illinois law in cases brought under diversity jurisdiction) and there is no federal law at issue, the fifth factor is neutral.

*6. The adequacy of the state court action to protect the federal plaintiffs' rights.* Tennessee state court is an adequate forum in which to protect Fecarotta's claims. Fecarotta can bring his claims in the Tennessee lawsuit. Tenn. R. Civ. P. 13.01 ("A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing

party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . .").  The state court can fairly adjudicate Fecarotta's claims.  *Lumen*, 780 F.2d at 697.

A litigant's substantial rights are protected when the court stays the lawsuit pending resolution of the state court case (as opposed to dismissing) "because it allows him the possibility to revive his federal litigation depending on the outcome in state court or in the unlikely event that the state court action is inadequate." *Freed*, 756 F.3d at 1023; *see Colorado River*, 424 U.S. at 818 ("[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding . . . are considerably more limited than the circumstances appropriate for abstention.").  If the court stays the pending federal case, Fecarotta will not risk being "time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits."  *Lumen*, 780 F.2d at 698.

The sixth factor favors abstention because the state court action can adequately protect Fecarotta's rights.

*7. The relative progress of the state and federal proceedings.*  Under this factor, the court must "determine which case 'appears to be closer to a resolution.'" *Kane*, 2017 WL 2243055, at *4 (quoting *Caminiti*, 962 F.2d at 702).  According to Fecarotta, "Covenant has demonstrated no urgency in litigating [the state lawsuit] as the [federal lawsuit] has already made more progress in two months than the [state lawsuit] has in five."  [17] at 11.

The seventh factor does not sway the analysis in either direction.  Other than the filing of the complaint and the briefing of the motion to dismiss, this case has not made substantial progress since it was filed on April 29, 2022.  So even if Covenant has not demonstrated urgency in litigating the state lawsuit (as Fecarotta alleges), the federal lawsuit still is not substantially closer to a resolution than the state lawsuit.  Put simply, the parties have not pointed to extensive progress in either the state or the federal lawsuit.  The seventh factor is neutral.  *See Beal Bank USA v. Swift*, No. 16-cv-10729, 2017 WL 372325, at *5 (N.D. Ill. Jan. 26, 2017).

*8. The presence or absence of concurrent jurisdiction.*  All of Fecarotta's claims in federal court arise under Illinois law.  Fecarotta could have asserted his claims as counterclaims in Tennessee state court.  Tenn. R. Civ. P. 13.01.  Since there is concurrent jurisdiction, the eighth factor favors abstention.  *See Beal Bank USA*, 2017 WL 372325, at *5; *cf. Caminiti*, 962 F.2d at 702–03.

*9. The availability of removal.*  "The ninth factor intends to prevent a federal court from hearing claims that are closely related to state court proceedings that cannot be removed."  *Freed*, 756 F.3d at 1023 (citing *Day*, 862 F.2d at 660).

The state lawsuit is currently non-removable under 28 U.S.C. § 1441(b)(2) because diversity is the only possible basis for federal jurisdiction. *See Freed*, 756 F.3d at 1023. Covenant's complaint seeks relief in the form of compensatory damages amounting to no less than $9,374, as well as attorney's fees, costs, and expenses in connection with the case. [7-1] at 10. Under 28 U.S.C. § 1332(a), the amount in controversy must exceed "the sum or value of $75,000, exclusive of interest and costs." "Because this federal suit is bound up with claims in the non-removable state proceedings," *Friedman*, 215 F. Supp. 3d at 657, the ninth factor weighs in favor of abstention.

However, this factor weighs only slightly in favor of abstention because it is possible that the case could be removed to federal court if Fecarotta asserts counterclaims that can be aggregated to satisfy the amount in controversy. *See generally* 14A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3706 (4th ed. 2012).

*10. Whether the federal action is vexatious or contrived.* This final factor "can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed*, 756 F.3d at 1024. Even without presuming Fecarotta's reason for filing a federal lawsuit two months after Covenant's complaint,[4] there is no "reason why all claims and all parties could not have been, and still could not be, part of one suit." *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988). This fact alone is a sufficient basis to conclude that the federal suit is "vexatious" and "contrived" within the meaning of *Colorado River*. *See id.*; *Kane*, 2017 WL 2243055, at *5. The tenth factor favors abstention.

\*     \*     \*

In sum, the majority of *Colorado River* factors favor abstention, proving the "exceptional circumstances" necessary to abstain. Specifically, the third, fourth, sixth, eighth, ninth, and tenth factors favor abstention (the third weighs heavily in its favor and the fourth and ninth weigh slightly in its favor). By contrast, only the first factor weighs against abstention. Given the weight and balance of the *Colorado River* factors, abstention is warranted. *See Freed*, 756 F.3d at 1021 (citation omitted) ("The district court is given the discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand.").

As another court in this district observed, "[t]he Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal."

---

[4] Fecarotta sent his demand letter to Covenant as early as January 2022. [17] at 6.

*Beal Bank USA*, 2017 WL 372325, at *6 (citing *Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004); *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851–52 (7th Cir. 2002)). Thus, this lawsuit is stayed pending resolution of the state court action. When the action concludes, "any party may move . . . to lift the stay and proceed with the federal suit in a manner consistent with the state court's rulings and any applicable preclusion principles." *Id.* (citing *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995)).

### III

Abstention is appropriate in this case because the state and federal proceedings at issue are parallel, the necessary exceptional circumstances exist, and a stay would promote wise judicial administration. The motion to dismiss [6] is denied without prejudice and the case is stayed pending the resolution of the state court proceedings, including any appeals in *Covenant Transport, Inc. v. Fecarotta, et al.*, No. 22 C 251 (Tenn. Cir. Ct. filed Feb. 18, 2022).

Date: March 31, 2023                     <u>/s/ Martha M. Pacold</u>

9